■ BELLA KOTLER et al., Respondents, v. CITY OF LONG BEACH, Appellant.— In a negligence action to recover damages for personal injuries sustained by plaintiff Bella Kotler and for medical expenses, etc., of her husband, defendant appeals from a judgment of the Supreme Court, Nassau County, entered May 29, 1973, in favor of plaintiffs, upon separate jury verdicts after successive trials on the issues of liability and damages. Judgment reversed, on the law and the facts, without costs, and complaint dismissed. Mrs. Kotler sustained her injuries in a fall while lawfully walking on a public boardwalk in the City of Long Beach. The complaint alleged that the accident was the result of the rotted condition of the wood and that this condition was caused by the affirmative acts of defendant, its agents, servants and/or employees acting within the scope and performance of their duties. Prior to the trial, defendant moved to dismiss the complaint as legally insufficient for failure to allege that plaintiffs had complied with section 256-a of the Charter of the City of Long Beach (Local Laws, 1953, No. 2; 1957, Nos. 1, 4 of City of Long Beach). That section provides that no civil action shall be maintained against the city for injuries sustained in consequence of any street, highway, bridge, culvert, sidewalk, crosswalk, grating, opening, drain or sewer being defective, out of repair, unsafe, dangerous or obstructed, unless written notice of the condition was filed with the city at least 48 hours prior to the occurrence and the city failed to make repairs within a reasonable time after such filing. The motion to dismiss the complaint was denied on the ground that plaintiffs intended to prove the allegation in the complaint that defendant had caused the defect in the boardwalk. At the trial on the issue of liability, plaintiffs testified that there was a hole in the boardwalk which they did not see and that Mrs. Kotler fell when her foot went into it. There was evidence that the boardwalk was used by city vehicles for the purposes of maintenance, sanitation and police surveillance and there was evidence that the boardwalk was also used by other than city vehicles, such as utility company trucks, general repair trucks and ambulances. Arthur P. Weber, a consulting engineer familiar with the principles of boardwalk construction, rendered the opinion that such traffic would cause structural damage. The city's representative testified that the city had not received notice of the defect from any source and that he had not discovered it upon his own inspections. Plaintiffs did not dispute the claim that they had not given the city prior notice of the defect. At the close of the evidence, a motion to dismiss the complaint, on the ground of absence of the notice required by section 256-a, was denied and the jury returned a verdict in plaintiffs' favor. The applicability of section 256-a to boardwalks was determined by this court in Goldstein v. City of Long Beach (28 A D 2d 558). It has also been determined that a city cannot rely on such a notice requirement to insulate itself from liability if it is responsible for the creation of the defect and that under such circumstances the city is deemed to have had notice (Appelbaum v. City of Long Beach, 8 A D 2d 818; Muszynski v. City of Buffalo, 33 A D 2d 648). In Appelbaum, the defendant city had constructed a water-supply installation with a metal cover and a depression in the paver ent surrounding it. In Muszynski, the defendant city was responsible for the placement of a barrel of

rock salt on a sidewalk and for refilling it periodically, the spillage from which caused deterioration of the sidewalk. In each of these cases the facts were such that the city had actual notice of the condition which caused the injury. In *Appelbaum* the manhole cover was negligently installed so as to project above the street level and in *Muszynski* the periodic refilling of the rock salt barrel, with the accompanying spillage, gave notice of the sidewalk deterioration. In the case at bar there was no evidence that defendant had actual notice of the defect or was in any way alerted to its existence. Since vehicles other than those of the city also used the boardwalk, it was not shown that the rotting of the wood was caused by defendant. There was testimony that the vehicular traffic on the boardwalk did produce some structural damage, but there was no evidence that the traffic created the hole that trapped Mrs. Kotler's foot. Accordingly, plaintiffs were required to prove that the notice required by section 256-a had been filed and their failure to do so requires reversal of the judgment and dismissal of the complaint. Hopkins, Acting P. J., Christ, Brennan and Munder, JJ., concur; Cohalan, J., dissents and votes to affirm, with the following memorandum: On August 7, 1971, the plaintiff wife was walking with her husband on a section of the defendant city's boardwalk. It gave way beneath her. She fell and was injured. A city policeman saw the accident and rendered assistance. He described the hole he saw at the scene as a "crevice". He added: "It was wood. It appeared to be a hole, approximately twelve inches in diameter, of rotted wood". He also testified that police cars, maintenance jeeps and medium sized sanitation trucks rode over the boardwalk on a daily basis. No attempt was made by defendant to controvert the happening of the accident, or the existence of the "crevice", or that the boardwalk was used extensively for vehicular traffic. Instead, by its pleadings and at the trial, the city relied on section 256-a of its charter, which pertinently reads: "No civil action shall be maintained against the city for damages or injuries to person or property sustained in consequence of any street, * * * sidewalk * * * being defective, out of repair, unsafe, dangerous * * * unless at least forty-eight hours prior to the occurrence resulting in such damage or injuries, written notice of the defective, unsafe, dangerous * * * condition of such street, * * * sidewalk * * * relating to the particular place shall have been filed in the office of the commissioner of public works of the city, and there was a failure or neglect to repair, remedy or remove the defect, danger * * * within a reasonable time after the filing of such notice." A boardwalk has been held to constitute a sidewalk (*Goldstein* v. *City of Long Beach*, 28 A D 2d 558). To support their contention that the city created the condition of which they complain, plaintiffs read into the record the transcript of the examination before trial of the city's beach maintenance superintendent, among whose duties was the supervision, maintenance and repair of the walk. His employment spanned 21 years, the last four as superintendent. He testified that the boardwalk was built in 1933 or 1935 by the Public Works Administration (U. S. A.) and that it ran for 2⅛ miles and was about 50 feet wide at the point of the accident. He said that despite the fact that he drove the length of the boardwalk once every working day he never saw the defect complained of. He agreed with the policeman that the various vehicles mentioned made constant use of the boardwalk as a highway. In four years, at five times a week for 50 weeks, he had to traverse the length of the boardwalk at least 1,000 times. On the reasonable assumption that he came back to where he started from each day, it would add up to 2,000 trips during the four-year period. Yet he swore he never saw a defect consisting of a one-foot wide crevice of rotten wood. His testimony

defies credulity. He could not say that the particular section wherein the accident occurred had ever been repaired in his 21 years on the job. In the face of such testimony, to be permitted to invoke the city ordinance to defeat plaintiffs' claims is a travesty. If for some zany reason the superintendent had cut a hole in the boardwalk with an axe — and the accident occurred — the city could probably be held liable. But, because he allowed the ravages of sand, wind, weather, salt air and time to achieve the same result, without even making a routine inspection, plaintiffs are informed they are out of court. Inaction where action is called for is itself a substitute for actual notice. I do not rest on constructive notice, but rather on the fact that by necessary construction he — and therefore, the city — had actual notice. He should have seen what was there to be seen. (*Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1). An expert called by plaintiffs testified that the wood planking had deteriorated to such a degree over the years that the weight of the plaintiff wife was sufficient to trigger the accident. As far as we know she was of normal weight for a woman 75 years of age. The expert added that the boardwalk was intended for foot travel only. Concededly, he said, vehicles of the kind described by the policeman could physically and functionally use the walk, but that in time — as happened — the structure would give way under the repeated and continuous use. He said the condition was of several years' standing. His testimony was not seriously disputed. In the case of *Muszynski* v. *City. of Buffalo* (33 A D 2d 648, affd. 29 N Y 2d 810) repeated spillage of rock salt poured upon a sidewalk, during periods of snow and ice accumulation, caused the walk to deteriorate. A child was injured as a result of falling on the defective sidewalk. It was held that since the city had created the defect, a 48-hour notice to it prior to the happening of the accident was unnecessary. By analogy the same reasoning applies here. (See, also, *Slater* v. *Town of Rochester*, 31 A D 2d 590.) I would affirm the judgment.